PETER FUIMAONO, Plaintiff

v.

UILI FUIA, LOSA FUIA, TAMAPELE TEVASEU
and SOFIMA TEVASEU, Defendants

MERETIANA PALEMIA, LAVASI'I TAUOA,
CRADDICK DEVELOPMENT, INC., and
MAGADALENE VAIVAO, Necessary Third-Party Defendants

MERETIANA PALEMIA, Cross-Claimant

v.

LAVASI'I TAUOA, Cross-Defendant

High Court of American Samoa
Land and Titles Division

LT No. 9-90

January 29, 1993

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge,
MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
 For Defendants Uili Fuia and Losa Fuia, Robert A.
 Dennison III
 For Necessary Third-Party Defendant and Cross-
 Claimant Meretiana Palemia, Togiola T.A. Tulafono
 For Necessary Third-Party Defendant and Cross-
 Defendant Lavasi'i Tauoa, Afoa L. Su'esu'e Lutu

 The trial of this action on December 3 through 8, 1992,
including inspection of the land area involved on December 4, 1992,

121

portrayed yet another vivid example of the ongoing slum development in American Samoa. In recent years, badly conceived land subdivisions have unfurled within the relatively expansive plains in American Samoa between Pala Lagoon and the villages of Ili'ili and Vaitogi. These disordered subdivisions are born of landowners' monetary greed, with little, if any, discernible planning for sensible rights of way for access roads and power, water, sewer and telephone lines. Unregulated land development of this nature is not in the public interest.

In the absence of land subdivision laws, courts are ill-equipped to constructively deal with problems arising out of privately dominated land subdivisions and, at best, can only forge piecemeal solutions in some specific situations. Lands subject to traditional values and properly governed by traditional leaders may fare well enough, even though technical deficiencies for suitable utility installations may occur. However, much of the plains area lacks any effective local governmental authority. The need is evident for legislative enactment and meaningful executive enforcement of a land subdivision law requiring prior approval and continuing oversight of land development plans by an appropriate public agency. The American Samoa Government's three branches, in concert, could step in and reasonably control this sorry state of affairs.

In this particular case, we are unable to fashion any legally acceptable remedy to correct the right of way problem about which plaintiff Peter Fuimaono ("Fuimaono") understandably complains.

## FINDINGS OF FACT

The attached drawing of the land area involved in this action is provided to assist in following the numerous, interrelated transactions described below.

At one time, necessary third-party defendant Lavasi'i Tauoa ("Lavasi'i") owned approximately 26.8 contiguous acres of land, known as "Ogevai," in the plains generally recognized as Tafuna, American Samoa, as individually owned land. In December 1981, he sold 1.05 acres at the southern end of this land ("Lot 12") to necessary third-party defendant Magdalene Vaivao ("Vaivao"), who, under the name Magdalene V. Craddick, also owned a large tract of land below this lot. Contemporaneously, if not in connection with this transaction, Lavasi'i and necessary third-party defendant Craddick Development, Inc. ("CDI") reached an oral agreement that authorized access to both their properties by an undedicated dirt road extending from the road (now paved) at the

northeast corner along the eastern boundary of Lavasi'i's land and turning westward into these properties ("ROW 1").[1]

In May 1984, Lavasi'i first conveyed another acre of this land ("Lot 10") to his sister, necessary third-party defendant Meritiana Palemia ("Meritiana"), another sister Vaililo Werner, who is not a party, and a brother Aniga Su'a, Jr. ("Aniga"), who is also not a party, as joint owners. In September 1984, he transferred 9.02 acres of this land ("Tract B") to the same three siblings. Tract B lies immediately to the north of Lot 12 and encompasses Lot 10. Lot 10 is at the eastern end of Tract B. The Tract B transaction was a part of the resolution of legal disputes between Lavasi'i and these siblings. At this point, Lavasi'i retained ownership only of the northern 8.73 acres of his original land ("Tract A").[2]

The three siblings agreed in turn to divide Tract B equally among themselves.[3] Meritiana apparently obtained the eastern one-third section and retained approximately one-half acre ("Lot 3") within it for her residence. Lot 3 is located southwest of Lot 10 along the southern boundary of Tract B. She also began (actually before Lavasi'i's conveyances of Lot 10 and Tract B to and the division of Tract B among the three siblings were formalized) the subdivision onslaught of Tract B. In April 1984, she sold Lot 10 to the Seventh-Day Adventist Church of American Samoa, Inc.

Nineteen eighty-five saw three more transactions. In February, Meritiana sold 0.06 of an acre ("Lot 6") to Palako and Valasi Lualemaga, who in April 1987 sold it to Rev. Olivia and Maria Safotu (collectively the "Safotus"). Rev. Safotu is a minister of the Seventh-Day Adventist Church. Lot 6 lies north of Lot 10 adjacent to Tract B. In May 1985, she sold 0.4352 of an acre ("Lot 4") to defendants Uili

---

[1] CDI and Vaivao have been served with process but have not appeared in this action. Fuimaono's motion for default judgments against them are simultaneously under advisement with the trial decision.

[2] Tract B, minus two later adjustments to the southeast and southwest corner areas, was registered as Lavasi'i's individually owned land in January 1982.

[3] In 1985, Aniga and his wife sold their three-plus-acre portion to Vaivao as trustee for Douglas O. Craddick.

Fuia ("Uili") and Losa Fuia (collectively the "Fuias"). Lot 4 is located immediately west of Lot 10 and north of Lot 3. In December 1985, she sold one-half of an acre ("Lot 1") to Tonisi and Matapua Matatia. Lot 1 is situated west of Lot 4.

Moving on to 1987, three more transactions occurred. In February, Meritiana sold another 0.06 of an acre ("Lot 7") to the Safotus. Lot 7 lies between Lots 10 and 6. In June, she sold one-quarter of an acre ("Lot 9") to Sausaulele and Beverly Tagaloa and 0.29 of an acre ("Lot 5") to defendants Tamapele Tevaseu ("Tamapele") and Sofima Tevaseu (collectively the "Tevaseus").[4] Lot 9 is located northwest of Lot 1 and immediately to the south of Tract B. Lot 5 is situated north of Lot 4 and is also adjacent to Tract B. There is another lot, as yet unnumbered, north of Lot 1, between Lots 5 and 9 and also next to Tract B. This lot is occupied by prospective buyers, who so far, apparently, have been unable to consummate purchase.

Except for the unnumbered lot, this series of Meritiana's sale transactions was completed in May 1989, when she sold 0.53 of an acre ("Lot 2") to Sagaga Lafaele. Lot 2 is located west of Lot 3 between Lots 1 and 12. Fuimaono purchased Lot 5 from the Taveseus in August 1989 and completed a then-partially constructed house on the property, in which he now resides. Lot 5 is surrounded by Tract B on the north, Lots 6 and 7 on the east, Lot 4 on the south, and the unnumbered lot on the west.

Fuimaono seeks a suitable right of way for access to Lot 5. The present access ("ROW 2") is a dirt road off of ROW 1, apparently beginning in Craddick property, that heads north along the west sides of Lots 2 and 1 and then makes a 90-degree, right turn and heads east between Lot 1 and the unnumbered lot to Lot 5. ROW 2 via ROW 1 provides not only circuitous access, but more importantly, ROW 2 is also narrow, sufficient for only one vehicle to travel and very rough. Recently, the occupants of the land immediately west of ROW 2 and a short distance from its beginning have erected or enlarged a house on their land, which has almost encroached upon ROW 2 and has created a safe-passage hazard. ROW 1's undedicated status, at least the portion on Vaivao's land, has placed some uncertainty on its permanent and

---

[4] The Tevaseus also failed to appear and are the subject of Fuimaono's motion for a default judgment, which is under advisement.

continuous existence. ROW 2's suitability for utility lines, particularly sewer lines, can be seriously questioned.

These circumstances clearly demonstrated Meritiana's lack of concern and foresight for suitable land development when she began subdividing Tract B. This action was commenced on March 22, 1990. On May 11, 1990, she then dedicated land for an access road ("Lot 11"). This dedication set aside a right of way that generally coincided with ROW 2, except in two particulars. First, at 20 feet, it is substantially wider. Second, it circled behind the house, causing the safety hazard. It is by no means clear from the evidence that the owner of this house was her or her sibling's grantee. Thus, doubt about the permanency of the new access road in this area, if it is ever constructed, is present. In any event, this hindsight action amply fortified Meritiana's earlier established attitudes.

Access to Lot 5 could be physically accomplished from three other directions. The shortest and most direct route would be a connecting road from Lot 5 to a dirt road close by in Tract A that then continues a short distance to the paved road north of Tract A. However, Lavasi'i at least orally arranged for access to Tract B when it was created, which access is not presently threatened. Under existing circumstances, neither Lavasi'i nor any of his grantees of lots in Tract A has any legal obligation to permit access to Lot 5 across Tract A.

A right of way could be established from the east across Lot 10 and then a small portion of either Lot 7 or Lot 4 to Lot 5.[5] However, as pitifully inadequate as ROW 2 is, this solution would require a finding of necessity, as enunciated in *Sese v. Leota*, 9 A.S.R.2d 35 (1988), *new trial denied*, 9 A.S.R. 136 (1988). An implied easement by necessity would be inappropriate, so long as access over ROW 2 is available.

Lastly, a right of way to Lot 5 from the south could be recognized in Lots 3 and 4. Justification by necessity for this solution is no more proper than it would be across Lots 10, 7 or 4 from the east. However, the conveyance of Lot 4 to the Fuias does show a 12-foot right of way extending along the entire east boundaries of Lot 4 and, apparently, Lot 3 retained by Meritiana. There is in fact an access road

---

[5] Although Lots 6 and 7 are presently landlocked, their ownership by a minister of the Seventh-Day Adventist Church, which owns Lot 10, forestalls any immediate access problem to these two small lots.

across Meritiana's Lot 3 into the Fuias' Lot 4, meandering some distance from the right of way shown in the Lot 4 conveyance.[6] Meritiana and Uili have denied any intention to create a right of way to Lot 5 in the Lot 4 conveyance.

Indeed, the conveyances of Lot 5, first by Meritiana to the Tevaseus and later by them to Fuimaono, contained no indications of any such intent. Moreover, the Tevaseus constructed a stone wall along the south boundary of Lot 5, which is generally parallel to the original north boundary of Lot 4. They understood that ROW 2 was their access way to Lot 5, and Tamapele passed on that information to Fuimaono when he bought Lot 5. Also of some note is the relatively steep incline between Lots 4 and 5.

Meritiana's sale to the Fuias on July 11, 1990, again after commencement of this action, of a 0.035 strip of land between Lots 4 and 5, raised some doubt about the denial by Meritiana and the Uili of any intent to create in the Lot 4 conveyance a right of way to Lot 5. Apparently, this strip resulted from earlier survey mistakes, and the belated sale may have been motivated by an opportunity to establish an additional buffer between the end of the surveyed right of way in the Lot 4 conveyance and Lot 5. However, we find from the entire circumstances that the right of way across Lots 3 and 4 was not created to provide access to Lot 5.

## CONCLUSIONS OF LAW

1. The Fuias, Meritiana and Lavasi'i are entitled to dismissal of this action pursuant to their respective motions under T.C.R.C.P. Rule 41(b) on the ground that upon the facts and the law Fuimaono has shown no right to relief.[7]

2. Lavasi'i is entitled to dismissal of the third-party claim by Meritiana against him pursuant to T.C.R.C.P. Rule 41(b) and (c).

---

[6] Despite available access to Lot 2 across ROW 2, a dirt road across Lot 3 to Lot 2 also exists. Meritiana testified that this means of access to Lot 2 is only temporary.

[7] These motions were made after Fuimaono had completed the presentation of his evidence. In accordance with Rule 41(b), the court declined to render any judgment until the close of all the evidence.

3. Fuimaono is not entitled to default judgments against the Tevaseus, CDI or Vaivao pursuant to his motion for default judgments against them under T.C.R.C.P. Rule 55(b), and that motion will be denied.

Judgment shall enter accordingly. It is so ordered.